IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS EVERETT WILLIAMS,

        Petitioner,               No. CIV S-04-2428 MCE DAD P

    vs.

MARK SHEPERD, et al.,

        Respondents.         <u>ORDER</u>

_____/

        Petitioner has requested an extension of time to file and serve objections to the August 1, 2005 findings and recommendations. Petitioner asserts that the additional time is needed so that he can obtain a copy of two court decisions cited in the findings and recommendations. In order to expedite the filing of petitioner's objections, the court has attached a copy of the two decisions requested by petitioner. Accordingly, IT IS HEREBY ORDERED that:

        1. Petitioner's August 17, 2005 request for an extension of time is granted in part; and

/////

/////

/////

1

1  2. Petitioner shall file and serve objections to the August 1, 2005 findings and
2  recommendations on or before September 12, 2005.  Respondents' reply, if any, shall be filed no
3  later than September 19, 2005.  No further extensions of time will be granted.
4  DATED: August 22, 2005.

*Dale A. Drozd*

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kf/4
will2428.111

Westlaw.

Slip Copy                                                                                                          Page 1

Slip Copy, 2005 WL 1555941
**(Cite as: Slip Copy)**

C
Slip Copy, 2005 WL 1555941
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
Patricia E. OETTING, Petitioner,
v.
Gloria HENRY, Warden, Respondent.
**No. CIVS041180MCEKJMP.**

June 24, 2005.

Patricia E. Oetting, Chowchilla, CA, pro se.
Brian Roy Means, California Department of Justice, Office of the Atty. Gen., Sacramento, CA, for Respondent.

*FINDINGS AND RECOMMENDATIONS*

MUELLER, Magistrate J.
*1 Petitioner is a state prison inmate proceeding pro se with a petition for a writ of habeas corpus, challenging her El Dorado County convictions for attempted murder and arson. Respondent has filed a motion to dismiss the petition, alleging it was filed outside the AEDPA statute of limitations.

I. *Background*

Petitioner was sentenced in September 1998, appealed her conviction to the California Court of Appeal, and then sought review in the California Supreme Court when the appeal was unsuccessful. Motion To Dismiss (MTD), Exs. A (Abstract of Judgment), B, C (Court of Appeal opinion, Petition For Review). That court denied review on August 22, 2001. MTD, Ex. D.

Petitioner began seeking collateral review with a petition filed April 5, 2002 in El Dorado County Superior Court; the petition was denied ten days later. MTD, Exs. E, F (Petition and Order Denying Petition). On July 15, petitioner filed a petition in the Court of Appeal, which denied it on August 8, 2002. MTD, Exs. G, H (Petition and Order). She returned to the Superior Court on August 9, 2002; that petition was denied on August 20, 2002. MTD, Exs I, J (Petition and Order). She filed a fourth petition in the California Supreme Court on December 26, 2002, and a fifth, also in the Supreme Court, on January 10, 2003. MTD, Exs. K, M (Petitions). These were denied on June 11, 2003 and July 16, 2003, respectively. MTD, Exs. L, N (Orders). FN1

> FN1. In her opposition, petitioner explains that she intended to file one petition with the Supreme Court, but the envelopes of the original and the required number of copies were mailed separately and the court treated them as different actions. Opp'n at 1.

The instant petition was filed May 20, 2004.

II. *Analysis*

A. *The Statute Of Limitations*

One of the changes the AEDPA made to the habeas statutes was to add a statute of limitations for filing a habeas petition:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1555941
(Cite as: Slip Copy)

Page 2

filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
28 U.S.C. § 2244(d).

The "conclusion of direct review" is not the denial of review by the California Supreme Court, but ninety days thereafter, upon the expiration of the time in which to file a petition for a writ of certiorari in the United States Supreme Court. *Tillema v. Long,* 253 F.3d 494, 498 (9th Cir.2001) ; *Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir.1999). In this case, the ninety day period expired on November 20, 2001. The AEDPA statute of limitations began running the next day, November 21, 2001, and would have expired November 21, 2002, absent any tolling.

*2 The statute of limitations is tolled during the pendency of any "properly filed" state collateral attack on the judgment. *Nino v. Galaza,* 183 F.3d 1003, 1006-07 (9th Cir.1999). In *Carey v. Saffold,* 536 U.S. 214, 218-21, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002), the Supreme Court held that the AEDPA statute of limitations is tolled not only between the actual filing and decision on a writ, but also during those periods between filings as a petitioner works his or her way "up the ladder" through higher courts to complete "one full round" of state court review of claims. *Id.* at 217, 219-20.

Respondent argues that petitioner is not entitled to any tolling of the time between denial of the petition in the Court of Appeal and the second Superior Court petition, or between denial of the fourth Supreme Court petition and filing of the fifth, because petitioner was not working her way from lower to higher courts. MTD at 4-5. In a case decided after the filing of respondent's motion, the Ninth Circuit has taken a somewhat broader view of tolling even when a prisoner is not moving in a straight line from Superior Court to the Supreme Court, where, as here, the intervals between state filings are not unduly long and the claims in separate petitions are overlapping. *Gaston v. Palmer,* 387 F.3d 1004, 1017-19 (9th Cir.2004) (habeas action may be "pending" even during a series of intervals between "non-ascending" petitions).

Ultimately, however, the court need not reach the application of *Gaston* to this case, for even if all the time between the first El Dorado County petition and the last Supreme Court petition is deemed tolled the instant action is not timely.

Petitioner filed her first state collateral attack on April 5, 2002, day 136 of the AEDPA year. The statute of limitations was tolled until July 17, 2003, the day after the denial of the last petition on July 16, 2003. Fed.R.Civ.P. 6(a) (excluding the day from which the period begins to run from the calculation of the time). Accordingly, the federal petition was due 229 days later, on March 1, 2004. The petition, filed May 20, 2004, is not timely.

B. *Equitable Tolling*

The Ninth Circuit has held:
> We will permit equitable tolling of AEDPA's limitations period only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time. When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate.

*Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir.1999) (internal quotations and citations omitted). It is a habeas petitioner's burden to establish his entitlement to equitable tolling. *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir.), *cert. denied,* 537 U.S. 1003, 123 S.Ct. 496, 154 L.Ed.2d 399 (2002).

Petitioner argues she is entitled to equitable tolling

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

because her cataracts make reading difficult and she had no one to assist her with her research. Reply at 3.

*3 Neither an inmate's ignorance of the law nor pro se status are the sort of extraordinary events upon which a finding of equitable tolling may be based. *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir.2000), *cert. denied,* 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001) (ignorance of the law); *Donovan v. Maine,* 276 F.3d 87, 94 (1st Cir.2002). In this case, petitioner's difficulties in conducting her own research do not support a finding of equitable tolling.

Petitioner also claims her cataracts make reading and researching difficult. In this case, however, it appears that petitioner was able to undertake research in support of her state habeas petition. *See, e.g.,* MTD, Ex. E at 3 (initial state petition). The instant petition does not include any citations to authority or develop the arguments in any manner different than her original presentation in state court. Accordingly, this court cannot find petitioner's cataracts had an impact on her ability to timely file this action.

Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

E.D.Cal.,2005.
Oetting v. Henry
Slip Copy, 2005 WL 1555941

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1

Not Reported in F.Supp.2d, 2000 WL 101245
**(Cite as: Not Reported in F.Supp.2d)**

C
Not Reported in F.Supp.2d, 2000 WL 101245
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
Terri Leigh MEIGGS, Petitioner,
v.
Carol A. PINKENS, Warden, Respondent.
**No. C 99-3638 EDL (PR).**

Jan. 20, 2000.

### JUDGMENT

LAPORTE, Magistrate J.
*1 Pursuant to the Order of Dismissal signed today, the petition for writ of habeas corpus is dismissed.

IT IS SO ORDERED AND ADJUDGED.

### ORDER OF DISMISSAL

### INTRODUCTION

Terri Leigh Meiggs, a prisoner at the Northern California Women's Facility, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss the petition as untimely under 28 U.S.C. § 2244(d). For the reasons discussed below, the court will grant respondent's motion and dismiss the untimely petition.

### BACKGROUND

Meiggs was convicted in Santa Clara County Superior Court of first degree burglary and was sentenced to eleven years in state prison on October 12, 1995. Meiggs appealed. The California Court of Appeal affirmed Meiggs' conviction. The Supreme Court of California denied Meiggs' petition for review on January 28, 1998. She did not file a petition for writ of certiorari in the United States Supreme Court and did not file a petition for writ of habeas corpus in state court. Meiggs filed her federal petition for writ of habeas corpus on July 29, 1999.

The timeliness dispute in this case springs from certain problems Meiggs had with her state court appellate attorney. Meiggs was represented in her state court appeal by court-appointed attorney Patricia Reber. This apparently was not the first case in which Reber represented Meiggs. Although the details of the earlier attorney-client relationship(s) have not been described to this court, Meiggs stated that they had an established pattern of doing business.

> Appeal attorney always filed next stage of appeal and notified petitioner of filing and would not be in contact again until appeal attorney was advised by the courts of their decision. Petitioner and appeal attorney would not communicate for ten months to a year between filings, this was a normal pattern due to the fact appeal attorney advised petitioner this was her normal business procedure.

Opposition to Motion To Dismiss ("Opposition"), p. 3.

The appeal of Meiggs' 1995 conviction did not get off to a good start. Reber apparently missed one of the initial filing deadlines on appeal due to medical problems. Reber wrote to Meiggs:

> Enclosed please find copies of a relief from default and extension request as well as a motion to permit filing of a petition for writ of habeas corpus filed in your case.
>
> As you will see from reading the default motion, I have had severe health problems. However, the clinic treatment does seem to have greatly helped me as is the medication which I am now using. I think everything for me is on the upswing, including finishing your brief and, hopefully, the writ.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 2

Not Reported in F.Supp.2d, 2000 WL 101245
**(Cite as: Not Reported in F.Supp.2d)**

Oct. 11, 1996 letter from Reber to Meiggs, attached to Opposition.

Reber attempted to obtain a court appointment (i.e., court authority for payment of legal fees) to file a habeas petition in state court for Meiggs but was unsuccessful. *See* Feb. 26, 1997 letter from Reber to Meiggs, attached to Opposition. Reber informed Meiggs that she would again attempt to obtain a court appointment to file a habeas petition but if she was unsuccessful, she would not be paid by the court for her work and therefore wanted to know if Meiggs' friends and family could pay a modest sum to cover Reber's expenses in seeking the writ. *See id.* About six months later, Reber wrote to Meiggs that she had filed a reply brief in the appeal and still wanted to file a petition for writ of habeas corpus, but had been unsuccessful in her second attempt to obtain a court appointment to file a habeas petition and therefore again wanted to know if Meiggs could pay her to pursue the writ. *See* July 10, 1997 letter from Reber to Meiggs, attached to Opposition.

*2 Meiggs paid Reber $1,000 to file a petition for writ of habeas corpus. Meiggs contends that the petition was to be filed in the "Northern District Court in regards to Case H014665," and in the " appellate court." *See* Meiggs' typed explanation for delay, p. 2, and Opposition, p. 2. In July 1997, Meiggs requested the money be paid to Reber from her inmate trust account. Meiggs paid the $1,000 in installments between July 18, 1997 and December 18, 1997. *See* July 14, 1997 CDC-128 form, attached to Opposition. Meiggs received a letter on December 18, 1997 informing her that Reber had submitted her petition for review. *See* Meiggs' typed explanation, p. 2. Meiggs apparently did not hear anything further from attorney Reber for over fifteen months. *See id.*

On March 20, 1999, Meiggs' brother called attorney Reber's office to inquire about the status of the case. Until that time, Meiggs "was under the assumption that [her] Petition for Review was still pending with the Attorney General. During that telephone conversation with [Meiggs' brother, attorney Reber] informed him that the Petition had been denied on January 30, 1998." Meiggs' typed explanation, p. 2. On March 30, 1999, Meiggs called attorney Reber, and attorney Reber explained to her that notice had been sent by mail to Meiggs about the denial of the petition for review. Meiggs never received it. *See id.*

### DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996 and imposed for the first time a statute of limitations on petitions for the writ of habeas corpus filed by state prisoners. A petition filed by a prisoner challenging a non-capital state conviction or sentence now must be filed within one year from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). FN1 "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari in the United States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir.1999). Where a petitioner does not seek a writ of certiorari from the United States Supreme Court, the limitation period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires. *See id.* The limitation period for Meiggs started on April 29, 1998, when the ninety-day period for her to file a petition for a writ of certiorari expired. Meiggs did not file her federal petition until fifteen months later.

> FN1. In rare instances, the limitation period may run from a date later than the date on which the judgment became final, *see* 28 U.S.C. § 2244(d)(1)(B)-(D), but this case presents no such circumstances.

Meiggs' petition was filed three months after the one-year period ended on April 29, 1999. Her petition is time-barred unless the limitations period is tolled. There are two types of tolling that may be considered under the AEDPA. The first type of tolling is found in the statute itself. Section 2244(d)(2) provides that the limitation period is tolled for the time period during which a properly filed application for post-conviction or other collateral review is pending in state court. Meiggs is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3

Not Reported in F.Supp.2d, 2000 WL 101245
**(Cite as: Not Reported in F.Supp.2d)**

not entitled to any statutory tolling because she never filed a state habeas petition.

*3 The second type of tolling is based on equitable principles. In the Ninth Circuit, equitable tolling of the AEDPA limitations period is allowed only "if ' extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States District Court (Beeler),* 128 F.3d 1283, 1288 (9th Cir.1997) (equitable tolling will not be available in most cases because extensions of time should only be granted if extraordinary circumstances beyond prisoner's control make it impossible for him to file petition on time), *cert. denied,* 118 S.Ct. 988, *and cert. denied,* 118 S.Ct. 1389 (1998), *overruled in part on other grounds by Calderon v. United States District Court (Kelly),* 163 F.3d 530 (9th Cir.1998) (en banc), *cert. denied,* 119 S.Ct. 1377 (1999). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir.1999). Equitable tolling of Section 2244(d)(1) is allowed sparingly; indeed, it has only been allowed in three Ninth Circuit cases to date. *See, e.g., id.* (equitably tolling limitations period when prison authorities failed to follow prisoner's request to draw filing fee for habeas petition from his trust account and mail it with petition to district court for filing); *Kelly,* 163 F.3d at 541-42 (prisoner entitled to equitable tolling due to earlier court-ordered stay of habeas proceedings, alleged mental incompetency, and existence of timely habeas proceedings pending at one time that were mistakenly dismissed); *Beeler,* 128 F.3d at 1289 (withdrawal of attorney who was aiding putative habeas petitioner to prepare petition and whose work product was not usable by replacement attorney qualified as extraordinary circumstances which justified tolling).

Meiggs's arguments in favor of equitable tolling in this case are unpersuasive. Meiggs suggests the limitations period should be tolled due to her attorney's failure to inform her of the deadline to file her federal habeas petition. Even if one assumes arguendo that her attorney had any duty to inform her of the deadline to file a federal petition, the attorney's failure to do so does not save Meiggs. Ignorance of the deadline-whether on the part of the petitioner herself or due to the petitioner's attorney's negligence-does not merit equitable tolling for the delay caused by such ignorance. *See Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir .) (neither a prisoner's unfamiliarity with the legal process nor the lack of representation during the filing period excused the missed deadline under Section 2244(d)(1)), *cert. denied,* 120 S.Ct. 504 (1999) ; *Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir.1999) (lack of knowledge of statutory deadline did not warrant equitable tolling of Section 2244(d)(1)); *cf. Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 909 (9th Cir.1986) (illiteracy of pro se petitioner not sufficient cause to excuse procedural default in habeas proceeding); *Tacho v. Martinez,* 862 F.2d 1376, 1381 (9th Cir.1988) (mental condition of pro se petitioner and reliance upon allegedly incompetent jailhouse lawyers did not show cause to excuse procedural default).

*4 Meiggs also contends that the limitations period should be tolled because her attorney failed to notify her when her petition for review was denied by the Supreme Court of California. Failing to make sure the client learned of the denial of the petition for review may have been negligent, but the attorney's ordinary negligence does not merit equitable tolling of a limitations period. *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990) (limitations period to file an employment discrimination complaint would not be tolled because failure to meet the deadline was due to " garden variety" negligence of attorney who was out of his office when notice of right-to-sue letter was received).

It is also important to consider Meiggs' lack of diligence because a petitioner who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151 (1984); *see also Miles,* 187 F.3d at 1107. Meiggs has not shown that she attempted to learn of the status of the appeal before March 1999. She let fifteen months go by without checking on the progress of the appeal. Meiggs also let at least fifteen months go by without inquiring about the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

status of a habeas petition she thought that attorney Reber was supposed to file. No extraordinary circumstance beyond Meiggs' control prevented her from contacting her attorney to learn about the progress of the appeal, the denial of the petition for review, or the progress of the work on the habeas petition. A reasonable client would not have let fifteen months pass without inquiring about the status of the appeal and would not have let fifteen months pass without inquiring why a habeas petition that had been paid for had not been filed. The unreasonableness of failing to inquire is even greater in this case in light of the fact that Meiggs thought her attorney had an illness that impeded her litigation efforts, and had earlier learned that the attorney missed a filing deadline due to an illness. Had Meiggs taken steps to find out the status of the appeal and habeas petition sooner, she would not have missed the deadline to file her habeas petition.

Meiggs also has not shown diligence in the four-month gap between learning of the denial of the petition for review in March 1999 and filing her federal habeas petition in July 1999. The deadline for Meiggs to file in federal court was April 29, 1999-about 4-5 weeks after she learned of the denial of the petition for review. Had Meiggs acted promptly after her belated discovery of the denial of the petition for review, she could have timely filed her federal petition. The time Meiggs took to assemble papers in support of her timeliness argument-an argument that was not required to be presented to the court in the actual habeas petition-was not an extraordinary circumstance beyond her control.

## CONCLUSION

Meiggs has not shown any extraordinary circumstances beyond her control that prevented her from timely filing her federal petition for writ of habeas corpus. Equitable tolling is not merited in this case. Meiggs' petition is time-barred under 28 U.S.C. § 2244(d)(1) because it was filed three months after the deadline. Respondent's motion to dismiss the petition as untimely is GRANTED. The petition is dismissed. The clerk shall close the file.

*5 IT IS SO ORDERED.

N.D.Cal.,2000.
Meiggs v. Pinkens
Not Reported in F.Supp.2d, 2000 WL 101245

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.